1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9   Nicholas Oritz Ramirez,

10                          Petitioner,

11   v.

12   Ron Credio, et al.,

13                          Respondents.

14

No. CV-13-02211-PHX-JJT (BSB)

**REPORT AND RECOMMENDATION**

15       Petitioner Nicholas Ortiz Ramirez has filed a Petition for Writ of Habeas Corpus,
16   pursuant to 28 U.S.C. § 2254, raising two grounds for relief.  (Doc. 1.)  Respondents
17   argue that portions of Petitioner's claims are procedurally barred from federal habeas
18   corpus review and that his remaining claims lack merit.  (Doc. 18.)  Petitioner has filed a
19   reply in support of his Petition.[1]   (Doc. 20.)   For the reasons below, the Court
20   recommends that the Petition be denied.

21   **I.      Procedural Background**

22           **A.      Charges, Trial, and Sentencing**

23       On March 17, 2010, Petitioner was indicted in the Maricopa County Superior
24   Court on one count of aggravated assault, a class three dangerous felony (Count One).
25   (Doc. 18, Exs. B, O.)  Following a trial, a jury convicted Petitioner as charged and also
26   found two aggravating circumstances. (Doc. 18, Ex. G.)  On November 17, 2010, the trial

27   ───────────────

28       [1]  Petitioner filed a reply on June 9, 2014 (Doc. 19), and re-filed his reply on June
    10, 2014 to include all twenty-two pages.  (Doc. 20.)

1   court sentenced Petitioner to an aggravated term of thirteen years' imprisonment, with

2   credit for 254 days of presentence incarceration.  (Doc. 18, Ex. H.)

3        Petitioner's conviction was based on an altercation in a store parking lot store in

4   Phoenix, Arizona.  (Doc. 18, Ex. O at 2.)  The store clerk, Elaina Schad, testified that

5   Petitioner smelled of alcohol and used foul language while in the check-out line.  (*Id.*)

6   Petitioner was asked to leave the store and he went into the parking lot.  (*Id.*)  The

7   accounts of the subsequent events varied.  However, the witnesses agreed that Petitioner

8   encountered the victim in the parking lot and a physical altercation followed.  (*Id.*)  The

9   store clerk testified that she saw Petitioner punch the victim, and that Petitioner and the

10  victim exchanged punches.  (*Id.*)  She also testified that she saw Petitioner hit the victim

11  with a baseball bat, knock him down, and then hit him several more times with the bat.

12  (*Id.* at 2-3.)  The store manager, Jack Unger, testified that he saw Petitioner beat the

13  victim with a bat several times while the victim was on the ground.  (*Id*. at 3.)

14       Petitioner testified that the victim approached him outside of the store, threatened

15  him, and then started swinging a bat at him.  (*Id.*)  Petitioner stated that he punched the

16  victim in self-defense, grabbed the bat, and hit the victim with the bat before the victim

17  fell to the ground.  (*Id.*)  He denied hitting the victim with the bat after he was on the

18  ground.  (*Id.*)  The victim testified that Petitioner threw a bicycle at him, which the

19  Petitioner denied.  (*Id.*)

20  **B.    Direct Appeal**

21       With the court's permission, on May 11, 2011, Petitioner filed a delayed notice of

22  direct appeal.  (Doc. 18, Exs. J, K.)  Petitioner filed an opening brief arguing that the

23  prosecutor engaged in misconduct "by repeatedly asking [Petitioner] if witnesses were

24  lying, vouching for the victim and police, and suggesting knowledge that bolstered the

25  victim's credibility."  (Doc. 18, Ex. L at i, 16.)  Because defense counsel did not object at

26  trial to the prosecution's cross-examination of Petitioner or to the prosecutor's closing

27  argument, the appellate court reviewed Petitioner's claims for fundamental error.

28  (Doc. 18, Ex. L at 16; Ex. O at 3.)

1    On April 17, 2012, the Arizona Court of Appeals issued a memorandum decision
2    affirming Petitioner's conviction and sentence.   (Doc. 18, Ex. O.)   Petitioner filed a
3    petition for review in the Arizona Supreme Court.   (Doc. 18, Ex. P and Q.)  On October
4    31, 2012, the Arizona Supreme Court summarily denied the petition for review.
5    (Doc. 18, Ex. R.)   On December 3, 2012, the Court of Appeals issued its mandate.
6    (Doc. 17, Ex. S.)

7    **C.    Post-Conviction Proceedings**

8    On November 19, 2012, Petitioner filed a notice of post-conviction relief pursuant
9    to Arizona Rule of Criminal Procedure 32.   (Doc. 18, Ex. T.)   The court appointed
10   counsel to represent Petitioner.  (Doc. 18, Ex. U.)  On January 28, 2013, counsel filed a
11   notice stating that he could find no issue to raise in a petition for post-conviction relief.
12   (Doc. 18, Ex. V.)   Counsel requested an extension of time to permit Petitioner to file a
13   pro se petition.   (*Id.*)   On January 31, 2013, the trial court granted the extension and
14   directed counsel to forward Petitioner the complete file including all transcripts in
15   counsel's possession. (Doc. 18, Ex. W.)  On March 4, 2013 counsel file a notice advising
16   the court that all records and transcripts in counsel's possession had been mailed to
17   Petitioner.  (Doc. 18, Ex. X.)

18   On April 17, 2013, Petitioner filed a motion to stay the post-conviction proceeding
19   because he wanted to first pursue a federal habeas corpus petition raising claims of
20   prosecutorial misconduct.  (Doc. 18, Ex. Y.)  On April 30, 2013, the trial court denied
21   Petitioner's motion, explained that the rules "governing post-conviction relief
22   proceedings [did] not permit the Court to issue [a] stay[]," and extended the deadline for
23   Petitioner to file a petition for post-conviction relief.  (Doc. 18, Ex. Z.)  On June 10,
24   2013, Petitioner filed a petition for post-conviction relief.  (Doc. 18, Ex. AA.)  After the
25   State responded to the petition, Petitioner sent a letter to the trial court requesting to
26   "abandon his Rule 32 appeal."  (Doc. 18, Exs. BB, CC.)  Petitioner did not provide any
27   explanation for his request to abandon his Rule 32 proceeding.  (*Id.*)   The trial court

28

1   construed the letter as a request to dismiss Petitioner's Rule 32 proceeding, and dismissed

2   that proceeding on August 28, 2013.  (Doc. 18, Ex. DD.)

3           **D.    Petition for Writ of Habeas Corpus**

4           On October 29, 2013, Petitioner filed his Petition in this Court arguing that the

5   prosecutor's cross-examination of Petitioner and his closing argument violated

6   Petitioner's due process rights (Ground One), and that the prosecutor improperly vouched

7   for the credibility of the State's witnesses in violation of the Fifth and Fourteenth

8   Amendments (Ground Two).  (Doc. 1.)  Respondents argue that habeas corpus review of

9   portions of Grounds One and Two is procedurally barred, and that the remainder of

10  Petitioner's claims lack merit.  (Doc. 18.)  Petitioner disputes these assertions.  (Doc. 20.)

11  **II.    Exhaustion and Procedural Bar**

12          Ordinarily, a federal court may not grant a petition for writ of habeas corpus

13  unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To

14  exhaust state remedies, a petitioner must afford the state courts the opportunity to rule

15  upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

16  court in a procedurally appropriate manner.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

17  ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly

18  present' his claim in each appropriate state court . . . thereby alerting that court to the

19  federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

20          A claim has been fairly presented if the petitioner has described both the operative

21  facts and the federal legal theory on which his claim is based.  *See Baldwin*, 541 U.S. at

22  33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must

23  read beyond a petition or brief . . . that does not alert it to the presence of a federal claim

24  in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at

25  31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes

26  of satisfying the exhaustion requirement if he presents the claim: (1) to the proper

27  forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and

28

1   legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)

2   (internal citations omitted).

3       The requirement that a petitioner exhaust available state court remedies promotes

4   comity by ensuring that the state courts have the first opportunity to address alleged

5   violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178

6   (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also

7   require federal courts to respect state procedural bars to review of a habeas petitioner's

8   claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's

9   claims may be precluded from federal review in two situations.

10       First, a claim may be procedurally defaulted and barred from federal habeas

11   corpus review when a petitioner failed to present his federal claims to the state court, but

12   returning to state court would be "futile" because the state court's procedural rules, such

13   as waiver or preclusion, would bar consideration of the previously unraised claims. *See*

14   *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th

15   Cir. 2002). If no state remedies are currently available, a claim is technically exhausted,

16   but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

17       Second, a claim may be procedurally barred when a petitioner raised a claim in

18   state court, but the state court found the claim barred on state procedural grounds. *See*

19   *Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the

20   State's procedural requirements for presenting his federal claim has deprived the state

21   courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S.

22   at 731-32. In this situation, federal habeas corpus review is precluded if the state court

23   opinion relies "on a state-law ground that is both 'independent' of the merits of the

24   federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S.

25   255, 260 (1989).

26       A state procedural ruling is "independent" if the application of the bar does not

27   depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*,

28   536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's

1    application of the procedural bar is "adequate" if it is "strictly or regularly followed."

2    *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally

3    excuses non-compliance with a procedural rule, that does not render its procedural bar

4    inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent

5    and adequate state ground doctrine ensures that the States' interest in correcting their own

6    mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a

7    procedurally barred claim has been exhausted, as a matter of comity, the federal court

8    will decline to consider the merits of that claim. *See id.* at 729-32.

9          However, because the doctrine of procedural default is based on comity, not

10   jurisdiction, federal courts retain the power to consider the merits of procedurally

11   defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will

12   not review the merits of a procedurally defaulted claim unless a petitioner demonstrates

13   "cause" for the failure to properly exhaust the claim in state court and "prejudice" from

14   the alleged constitutional violation, or shows that a "fundamental miscarriage of justice"

15   would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750.

16   Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless

17   claims regardless of whether the claim was properly exhausted in state court. *See Rhines*

18   *v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court

19   to allow claims to be raised in state court if they are subject to dismissal under

20   § 2254(b)(2) as "plainly meritless").

21   **III.    Petitioner's Claims in Grounds One and Two**

22         Respondents argue that portions of Grounds One and Two are procedurally barred

23   from federal habeas corpus review because Petitioner did not fairly present those specific

24   claims to the state courts. To fairly present a claim for purposes of exhaustion, the

25   petitioner must describe the operative facts and federal legal theory on which his claims

26   are based so that the state courts have a fair opportunity to resolve these claims.

27   *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *see also Rose v. Palmateer*, 395 F.3d 1108,

28   1111 (9th Cir. 2005) ("In addition to requiring specificity in pleading the federal nature

of a claim, we also require a petitioner to articulate the substance of an alleged violation with some particularity.").  A petitioner's claim of a constitutional violation based on one set of facts, does not exhaust other claims of the same constitutional violation based on different facts.  *See Moormann v. Schriro*, 426 F.3d 1044, 1056-57 (9th Cir. 2005) (stating that the petitioner's presentation of one claim of ineffective assistance of counsel in state court proceedings did not exhaust other unrelated alleged instances of counsel's ineffectiveness).

### A.   Petitioner's Claims Were not Fairly Presented and are Procedurally Barred

Respondents correctly argue that federal habeas corpus review is procedurally barred as to Petitioner's allegation in Ground One that the prosecutor's cross-examination of Petitioner "compelled [him] to engage in self-incrimination and be a witness against himself" in violation of the Fifth and Fourteenth Amendments because Petitioner did not fairly present this particular claim to the state courts.  (Doc. 18 at 16.)

On direct appeal, Petitioner argued only that the prosecutor committed misconduct by repeatedly asking Petitioner on cross-examination if the witnesses were lying. (Doc. 18, Exs. L, N)  Petitioner, however, did not argue that the prosecutor's cross-examination caused Petitioner to incriminate himself in violation of the Fifth and Fourteenth Amendments.  (*Id.*)  Petitioner did not present any claims on post-conviction review because he withdrew his petition.  (Doc. 18, Exs. CC, DD.)  Accordingly, Petitioner did not fairly present to the state courts his claim that the prosecutor's alleged misconduct caused him to incriminate himself.

Respondents also correctly argue that federal habeas corpus review of Ground Two is barred as to Petitioner's assertions that: (1) "trial counsel failed to introduce the alleged victim's medical records," thereby "prejudicing petitioner and bolstering the alleged victim's credibility [and] influencing the jury," (2) the prosecutor used the investigating officer's testimony to "inflame" the evidence related to Petitioner's t-shirt and shoes and to "inflame" the "alcohol issue," and (3) the prosecutor coached the store

clerk on redirect examination, and that if defense counsel had objected during the store clerk's redirect examination, "the outcome in the case would have been different." (Doc. 1 at 21, 24, 25.)   On appeal, Petitioner did not assert those claims, but instead argued only that the prosecutor committed misconduct by vouching for the victim and the investigating officer.   *See Rose*, 395 F.3d at 1111. (Exhs. L and N.)   Additionally, Petitioner did not raise any issues on post-conviction review because the post-conviction proceeding was dismissed at Petitioner's request.  (Exhs. CC and DD.)

It would be futile for Petitioner to return to the state court to exhaust these portions of Grounds One and Two because a successive petition for post-conviction relief would be untimely, and these claims would be precluded from Rule 32 review because they could have been raised in Petitioner's prior post-conviction proceeding.  *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also State v. Bennett*, 146 P.3d 63, 67 (2006) ("As a general rule, when [claims] are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims [] will be deemed waived and precluded.") (internal quotation omitted).  Accordingly, these portions of Grounds One and Two are technically exhausted and procedurally defaulted.  *See McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)); *see also Boerckel*, 526 U.S. at 848.  As discussed below, Petitioner has not established any basis to excuse the procedural bar to habeas corpus review of these claims.

**B.     Petitioner has not Established a Basis to Overcome the Procedural Bar**

Because portions of Petitioner's claims asserted in Grounds One and Two are procedurally barred, federal habeas corpus review of those particular claims is unavailable unless Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice" to overcome the procedural bar.  *See Coleman*, 501 U.S. at 749. For the reasons below, the Court finds that Petitioner has not established a basis to overcome the procedural bar.

### 1.      Fundamental Miscarriage of Justice

A federal court may review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A "fundamental miscarriage of justice" occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup,* 513 U.S. at 324.  The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.  Petitioner has not presented new evidence and does not assert that failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice (Docs. 1, 20), thus, he has not met *Schlup's* high standard and this exception does not excuse the procedural bar.

### 2.      Cause and Prejudice

A federal court may review the merits of a procedurally defaulted claim if a petitioner establishes "cause" and "prejudice."  *Coleman*, 501 U.S. at 750.  To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules.  *Teague*, 489 U.S. at 298.  A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause.  *Murray*, 477 U.S. at 488.

"Prejudice" is actual harm resulting from the constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with

error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

In his Reply, Petitioner argues cause based on his lack of access to certain documents, reports, and depositions. (Doc. 20 at 9.) Specifically, Petitioner argues that he needed a report prepared by one of the investigating officers because that officer interviewed the victims and his "report would support other issues brought out." (*Id.* at 10.) He also states that he was unable to present his claims on post-conviction review because he did not have access to the depositions of witnesses Jack Unger, Jose Valdez, and Elaina Schad. (Doc. 20 at 14-16.) Petitioner asserts that because he did not have the police reports and deposition transcripts, he withdrew his post-conviction action. (Doc. 20 at 17.) Petitioner states that, to date, he has not been provided with any of the requested documents.

Petitioner does explain why the lack of police reports and deposition transcripts prevented him from presenting his claims to the state court, but did not prevent him from filing a petition for writ of habeas corpus in this Court. Additionally, the record reflects that Petitioner received copies of this "complete trial and appellate file" on March 6, 2013, several months before the June 7, 2013 deadline for filing a petition for post-conviction relief. (Doc. 18, Exs. Y, Z.) Although Petitioner filed a petition for post-conviction relief, he withdrew it without explanation and "apologize[d] for wasting the court's precious time." (Doc. 18, Exs. AA, CC.) Thus, although Petitioner may have wanted more documentation to support his claims, it appears that he had access to sufficient information to present his claims to the state courts. Accordingly, he has not shown that lack of access to certain documents constitutes cause to excuse the procedural bar to habeas corpus review of portions of Grounds One and Two.

1    Additionally, Petitioner's status as an inmate, lack of legal knowledge and
2    assistance, and limited legal resources do not establish cause to excuse the procedural
3    bar.  *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an
4    illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a
5    procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's
6    reliance upon jailhouse lawyers did not constitute cause).  Accordingly, Petitioner has not
7    shown cause for his procedural default and the Court does not consider whether
8    Petitioner has shown prejudice.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Because
9    portions of Grounds One and Two are procedurally barred (*see* Section III.A) and
10   Petitioner has not established a basis to overcome that bar, the Court recommends that
11   those portions of Grounds One and Two be denied.

## IV.   Petitioner's Remaining Claims

13   In Grounds One and Two, Petitioner asserts a federal due process violation based
14   on several instances of prosecutorial misconduct including improper vouching for state's
15   witnesses, asking Petitioner on cross-examination if witnesses were lying, and referring
16   to that line of questioning during closing argument.   (Doc. 1.)   Petitioner "fairly
17   presented" federal due process claims based on these instances of alleged prosecutorial
18   misconduct to the Arizona Court of Appeals on direct review. (Doc. 18, Ex. L.)   The
19   appellate court found that these claims lacked merit.  (Doc. 18, Ex. O.)

20   Because these claims of prosecutorial misconduct were adjudicated on the merits
21   in state court, federal habeas relief is not available unless Petitioner shows: (1) that the
22   state court's decision "was contrary to" federal law as clearly established in the holdings
23   of the United States Supreme Court at the time of the state court decision, *Greene v.*
24   *Fisher*, ___ U.S. ___, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable
25   application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable
26   determination of the facts" in light of the record before the state court. 28 U.S.C.
27   § 2254(d)(2); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011). This
28   standard is "difficult to meet."  *Id.* at 786.  It is also a "highly deferential standard for

1    evaluating state-court rulings, which demands that state-court decisions be given the
2    benefit of the doubt."   *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)
3    (citation and internal quotation marks omitted).

4         The appropriate standard for a claim of prosecutorial misconduct is "the narrow
5    one of due process, and not the broad exercise of supervisory power."   *Darden v.*
6    *Wainwright*, 477 U.S. 168, 181 (1986).   To succeed on a claim of prosecutorial
7    misconduct, a petitioner must prove that the prosecutor's remarks were improper and that
8    they so infected the trial with unfairness as to make the resulting conviction a denial of
9    due process.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974); *see Smith v. Phillips*,
10   455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged
11   prosecutorial misconduct is the fairness of the trial, not the culpability of the
12   prosecutor.").   A petitioner is not entitled to habeas corpus relief in the absence of a due
13   process violation even if the prosecutor's comments were "undesirable or even
14   universally condemned."  *Donnelly*, 416 U.S. at 642.

15        When evaluating a petitioner's allegations of prosecutorial misconduct, the court
16   "must consider the probable effect of the prosecutor's [comments] on the jury's ability to
17   judge the evidence fairly."  *United States v. Young*, 470 U.S. 1, 12 (1985).  To make such
18   an assessment, the court must consider the prosecutor's remarks in context.  *See Boyde v.*
19   *California*, 494 U.S. 370, 385 (1990); *Williams v. Borg*, 139 F.3d 737, 745 (9th Cir.
20   1998).  The Supreme Court has assessed the fairness of a petitioner's trial by considering,
21   among other circumstances, whether the prosecutor's comments manipulated or misstated
22   the evidence, whether the trial court gave a curative instruction, and "the weight of the
23   evidence against the petitioner."  *Darden,* 477 U.S. at 181-82.

24        **A.   Ground One**

25        In Ground One, Petitioner asserts that the prosecutor improperly cross-examined
26   him by asking whether the State's witnesses were lying. (Doc. 1 at 8, 13-19.)  Petitioner
27   also argues that the prosecutor's closing argument was improper because he again
28   referred to whether the State's witnesses were lying.  (*Id.*)  Petitioner argues that the

1    prosecutor's misconduct deprived him of a fair trial in violation of his federal

2    constitutional rights to due process. (*Id.*) Petitioner raised this claim of prosecutorial

3    misconduct on direct appeal and the court rejected it.[2] (Doc. 18, Ex. O at 3-7.) Petitioner

4    has not shown that the state court's resolution of this claim was based on an unreasonable

5    determination of the facts, or that it was contrary to, or based on an unreasonable

6    application of, federal law. *See* 28 U.S.C. § 2244(d).

7         First, the record reflects that the prosecutor did not engage in misconduct by

8    asking "were they lying" questions on cross-examination or by referring to the possibility

9    that the witnesses had lied on closing argument. The record reflects that one witness, the

10   store clerk, testified that when Petitioner got to her cash register, "he said fuck or

11   something like that." (Doc. 18, Ex. E at 17.) When she asked Petitioner to stop using

12   that language, he "pointed in [her] face" and, "[h]e's all like fuck you." (*Id.* at 18.) She

13   testified that, after she told Petitioner to leave the store, "he was like fuck you, you

14   bitch . . . ." (*Id.* at 19.) The store clerk also testified that, when Petitioner was outside of

15   the store, she saw him swing a bat at the victim "three or four times" when he was on the

16   ground. (*Id.* at 24-25.)

17        Another witness, the store manager, testified that he followed Petitioner out of the

18   store and told him he "was no longer welcome in [the] store." (*Id.* at 53-54.) The store

19   manager said that Petitioner "turned around," and said "I'm going to beat the living shit

20   out of you," and "started walking towards" him. (*Id.* at 54, 69.) After the store manager

21   retreated into the store, he saw Petitioner walk up to, and start talking with, two people in

22   the parking lot. (*Id.* at 55.) The store manager also testified that he looked out the

---

24

25        [2]   The court of appeals found that the prosecutor's cross-examination was not
     misconduct, but did not explicitly rule on Petitioner's claim that the prosecutor's alleged
26   misconduct denied Petitioner the right to a fair trial in violation of the Due Process
     Clause. (Doc. 18, Ex. O.) However, "for purposes of § 2254(d), when a state court rules
27   against a defendant in an opinion that rejects some of the defendant's claims but does not
     expressly address a federal claim, a federal habeas court must presume, subject to
28   rebuttal, that the federal claim was adjudicated on the merits." *Johnson v. Williams*,
     ___U.S. ___, 133 S. Ct. 1088, 1089 (2013).   Thus, the court of appeals implicitly
     adjudicated Petitioner's federal due process claim.

1   window and saw Petitioner standing "over the victim's body" "swinging the bat at least

2   three or four times" as the victim was "laying on the ground." (*Id.* at 57.)

3         On direct examination Petitioner disputed the testimony of the store clerk and

4   store manager.  Specifically, Petitioner denied that he "swore" at the store clerk or said

5   "the F word," claiming that he "might have said damn or something like that" while

6   talking to himself. (*Id.* at 79, 93.)  Petitioner also denied that the store manager followed

7   him outside of the store and spoke to him in the parking lot. (*Id.* at 80-81.)  Petitioner

8   claimed that he walked into the parking lot and was "digging in [his] pockets" when he

9   was approached by the victim. (*Id.* at 81-82.)  Petitioner denied hitting the victim with

10   the bat when he was on the ground. (*Id.* at 85.)

11         On cross-examination, the prosecutor questioned Petitioner regarding this

12   conflicting testimony:

13
14        Q.    And while in line, you said a cuss word? That's a simple question.  Did you say a cuss word while in line?

15
16        A.    No.

     Q.    Didn't we just hear that you said [the store clerk] was upset that you--

17
18        A.    She was upset because I said like damn.  I didn't say no F word or anything like that.

19
20        Q.    Okay. You said damn and [the store clerk] became upset is that your    testimony here today.  You want the jury to believe that? Do you want the jury to believe that?

21
22        A.    What are you getting at? Ask me a question.

     Q.    My question is do you believe that the reason [the store clerk] was upset is because you said damn?

23        A.    That's possible. Yeah.

24        * * *

25        Q.    Okay. And you didn't tell her F you?

26        A.    No.

27        Q.    You didn't say the F word at all, did you?

28        A.    No.

1    Q.    It was just damn?

2    A.    Yeah.

3    * * *

4    Q.    Okay. When you were walking out, did the manager
     come and talk to you?
5
     A.    No.
6
     Q.    He came and told you you weren't allowed in the store
7    anymore, right?

8    A.    I went out the door and I was walking. He didn't say
     nothing to me.
9
     Q.    And you turned around to him?
10
     A.    I didn't see him. I didn't hear nothing.
11
     Q.    That didn't happen?
12
     A.    Nothing.
13
     Q.    So what [the store manager] came up and testified to
14   earlier today, and you were sitting right here, that was all a
     lie?
15
     A.    Yeah.
16
     Q.    Okay. So [the store manager] was lying?
17
     A.    Yeah.
18
     Q.    And [the store clerk] was lying when she said that you
19   said the F word, right?

20   A.    I would say so, yeah.

21   Q.    Okay.  So we got two liars that I brought up on the
     stand today, right?
22
     A.    Appears to be, yeah.
23
     Q.    But you're not a liar, right?
24
     A.    No.
25
     * * *
26
     Q.    Okay.  So did you go talk to any individuals when you
27   left the store?

28   A.    I was walking. I was leaving. I was exiting going down
     the parking lot, and I was approached by [the victim].

- 15 -

Q.    Okay.  But you heard [the store manager] say that he saw you talking to two individuals.  That didn't happen?

A.    Uh-uh.

Q.    So he was lying about that, too?

A.    Yeah.

* * *

Q.    Okay. Now you heard a couple of witnesses come in today, [the store manager and the store clerk], and they both testified that you were hitting [the victim] while he was on the ground.  Were they lying?

A.    They were lying.

Q.    Okay.  Now you don't know [the store clerk], do you?

A.    I don't know her.

Q.    You don't know [the store manager]?

A.    I don't know [the store manager].

Q.    So they're just like strangers to you, right?

A.    Yeah.

Q.    You don't know them from any other stranger, right?

A.    I don't know them.  I told you.

Q.    So do you think they have something against you that they would want to come in here and lie today?

A.    I don't know what their attitude is or what. I don't know.  I couldn't tell you.

(Doc. 18, Ex. E at 92-96, 100-01.)

During closing argument, the prosecutor argued that Petitioner essentially accused the store manager and store clerk of lying.  (Doc. 18, Ex. F at 22.)  The prosecutor's cross-examination and closing argument focused on Petitioner's and the witnesses' inconsistent testimony and emphasized the conflict in the evidence.  The Arizona Court of Appeals has found that similar questioning was proper "when the only possible explanation for the inconsistent testimony is deceit or lying." *State v. Morales*, 10 P.3d at 630, 633 (Ariz. Ct. App. 2000).  Considering the conflict between Plaintiff's and the store

- 16 -

clerk's testimony and between Plaintiff's and the store manager's testimony, either the witnesses were mistaken or lying, or Petitioner was mistaken or lying. Thus, the prosecutor's cross-examination of Petitioner regarding whether the witnesses were lying, and his reference to that issue on closing argument, highlighted the inconsistencies in the testimony and was not prosecutorial misconduct.

Second, even assuming the prosecutor's cross-examination and closing argument based on "were they lying" arguments was misconduct, Petitioner has not shown that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. Even if the practice of asking "were they lying" questions is generally found improper in other jurisdictions, as Petitioner argued on direct appeal (Doc. 18, Ex. L at 30-31), and thus is "universally condemned," this is insufficient to demonstrate a due process violation. *Id.; see also DeChristoforo*, 416 U.S. at 642-43. The prosecutor's cross-examination of Petitioner with "were they lying" questions and reference to that the line of questioning during closing argument was not so persistent as to have "infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden*, 477 U.S. at 181.

Moreover, the trial court instructed the jury that it was the judge of witness credibility and that they should consider Petitioner's testimony in the same manner as they would any other witness's testimony. (Doc. 18, Ex. F at 9-10.) Jurors are presumed to follow the court's instructions. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987). For these reasons, Petitioner has not shown that the appellate court's resolution of this claim was based on an unreasonable determination of the facts, or that is was contrary to, or based on an unreasonable application of, federal law and he is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2244(d).

## B.   Ground Two

In Ground Two, Petitioner asserts that the prosecutor improperly vouched for the State's witnesses (the victim and investigating officer) and that the vouching violated his right to a fair trial in violation of the Due Process Clause. (Doc. 1 at 9, 20-26.) Petitioner

1  raised this claim of prosecutorial misconduct on direct appeal and the appellate court

2  rejected it.[3]   (Doc. 18, Ex. O. at 7-11.)   The court of appeals found that even if the

3  prosecutor vouched for the victim, Petitioner "fail[ed] to persuade us this error so

4  "'permeat[ed] the entire atmosphere of the trial'" "that he was denied a fair trial."

5  (Doc. 18, Ex. O at 9.)   The court of appeals further found that even if the prosecutor

6  vouched for the officer "we cannot say this misconduct permeated the proceedings and

7  deprived [Petitioner] of a fair trial," and the record did not support a finding that the

8  prosecutor's conduct "so infected the trial with unfairness as to make the resulting

9  conviction a denial of due process." (*Id.* at 11.) As set forth below, Petitioner has not

10  shown that the state court's resolution of his claims of improper vouching was based on

11  an unreasonable determination of the facts or that it was contrary to, or an unreasonable

12  application of, federal law.   28 U.S.C. § 2244(d).   Accordingly, he is not entitled to

13  habeas corpus relief based on this claim.

14  **1.** **Vouching**

15  One type of prosecutorial misconduct occurs when a prosecutor vouches for the

16  credibility of a witness.   *See United States v. Young*, 470 U.S. 1, 18-19 (1985).

17  "Vouching consists of placing the prestige of the government behind a witness through

18  personal assurances of the witness's veracity, or suggesting that information not

19  presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986

20  F.2d 1273, 1276 (9th Cir. 1993) (citing *United States v. Roberts*, 618 F.2d 530, 533 (9th

21

22  [3] Although the court of appeals did not specifically cite federal law in denying this claim of prosecutorial misconduct, the court of appeals cited *State v. Hughes*, 969

23  P.2d 1184, 1191 (Ariz. 1998), to support is conclusion that Petitioner failed "to persuade [the court that] this error so 'permeat[ed] the entire atmosphere of the trial'" that he was

24  denied a fair trial." (Doc. 18, Ex. O at 7.)   *Hughes* cited *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), for the proposition that to prevail on a claim of prosecutorial

25  misconduct, a defendant must demonstrate that the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hughes*, 969

26  P.2d at 1191.   Thus, the court of appeals applied the correct legal standard and its decision was not "contrary to" controlling Supreme Court precedent. *See Mitchell v.*

27  *Esparza*, 540 U.S 12, 14 (2003) (citations omitted) (A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in

28  [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.").

- 18 -

Cir. 1980)).  "Vouching constitutes misconduct because it may lead the jury to convict on the basis of evidence not presented; it also carries the imprimatur of the government, which may induce the jury to adopt the government's judgment rather than its own." *Runningeagle v. Schriro*, 2007 WL 4200743, at *15 (D. Ariz. Nov. 27, 2007) (citing *Young*, 470 U.S. at 18).

### 2.    The Prosecutor did not Improperly Vouch for the Victim

Petitioner argues that the prosecutor improperly vouched for the victim during closing argument by arguing "facts not in evidence," including the "victim's background," "where he came from and that communicating for him was an issue." (Doc. 1 at 20.)   The record does not support this assertion.   As discussed below, the prosecutor did not place the prestige of the State behind the victim or suggest that information not presented at trial supported his testimony.  *See Young*, 470 U.S. at 18-19. Rather, the prosecutor properly relied upon the testimony presented to argue that reasonable inferences could be drawn from the testimony to conclude that the victim's testimony was credible.

The victim was the only witness to testify through an interpreter.  (Doc. 18, Ex. D at 86, 114.)  He testified that he came to America in 1981 from "Esmeraldo, Coahuila, Sierra Morara."  (*Id.* at 86-87.)  He testified that he had worked in restaurants, a car wash, and in landscaping.  (*Id.* at 87.)  On direct examination, the prosecutor questioned the victim based upon the prosecutor's understanding that there was one confrontation between the victim and Petitioner.  (*Id.* at 89-91.)  The victim testified that the day of the incident, he was in the parking lot of the Dollar General Store reading and drinking beer and that he was later attacked by Petitioner.  (Doc. 18, Ex. D at 88-89, 97.)  The victim stated that he did not know Petitioner.  (*Id.* at 108.)

The victim's testimony also indicated that he may have had difficulty understanding or communicating.  (Doc. 18, Ex. D at 104-05 (the victim denied that he spoke to the police or said he didn't remember if he talked to police, but said he talked

1    with a detective), 112-13 (in response to the court's statement that "he [could] answer,"

2    "if he was able," the victim responded "If I could what?").)

3          During cross-examination, defense counsel asserted that the victim "changed [his]

4    story" regarding where and when Petitioner attacked him.  (*Id.* at 106-07.)  On re-direct

5    examination, the victim explained that Petitioner first punched, kicked, and threw a

6    bicycle at him before going into the store, then beat him with the bat after exiting the

7    store.  (*Id.* at 112-13.)

8          In his closing argument, the prosecutor asked the jurors to rely upon their

9    observations of the victim in evaluating his credibility:

10               The victim's testimony should be believed.  Here's why.  The
                 victim has no reason to go up there and lie.  The victim
11               doesn't know the defendant.  He has no reason to come up
                 here and tell you a story that isn't true.  The victim had some
12               difficulty   speaking   English,   had   some   difficulty
                 communicating.  You heard that here in the trial.  You saw he
13               had a hard time conveying exactly what happened.  You had
                 to understand where his background is from, where he comes
14               from, and that communicating for him is an issue.  I struggled
                 getting things out of him.  I finally cleared up what his story
15               was in the end, that he was attacked twice, not once.  That
                 doesn't mean he deserved to be attacked, because he can't
16               communicate well.

17   (Doc. 18, Ex. F at 23-24.)

18         The prosecutor did not improperly vouch for the victim by placing the prestige of

19   the State behind the victim or suggesting that information not presented at trial supported

20   his testimony.  *See Necoechea*, 986 F.2d at 1276.  Rather, based on the manner in which

21   the victim testified at trial, the prosecutor noted that the victim had some difficulty

22   communicating.  He also noted that the victim was a non-native American, and that he

23   was unsophisticated, as evidenced by his behavior of spending several hours in the

24   parking lot drinking beer in the middle of the day.  (Doc. 18, Ex. F at 23-24.)  The

25   prosecutor's statement that he "struggled getting things out of [the victim]" and "cleared

26   up" the victim's "story" referred to the prosecutor's questioning of the victim during trial,

27   and did not refer to outside investigation or information that counsel had about the

28   victim.

1     Additionally, even if the prosecutor engaged in misconduct, the trial court

2    instructed the jury that counsels' arguments were not evidence. (Doc. 18, Ex. F at 6.) "A

3    jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234

4    (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Thus, Petitioner has not

5    shown that the state court's resolution of his claim that the prosecutor improperly

6    vouched for the victim was based on an unreasonable determination of the facts, or that it

7    was contrary to, or an unreasonable application of, federal law. Accordingly, Petitioner

8    is not entitled to habeas corpus relief on this claim.

9           **3.      The Prosecutor did not Improperly Vouch for the Investigating**
            **Officer**
10

11     Petitioner also argues that the prosecutor improperly vouched for the investigating

12    officer. (Doc. 1 at 23.) The record does not support this argument. On direct

13    examination, the officer testified that, after Petitioner was taken into custody, he was

14    "irrational" and "angry" — "up one minute, down the next." (Doc. 18, Ex. E at 6, 8.) He

15    also testified that he smelled alcohol on Petitioner's breath. (*Id*. at 11.) During cross-

16    examination, Petitioner attacked the officer's credibility by arguing his report of the

17    incident was incomplete and did not include details to which he testified at trial.

18           Q.      The facts that you gathered that night, the facts that
             you saw, investigated, talked to people, all the relevant facts
19           that you investigated, did they make their way to your report?

20           A.      Did I do a thorough report? Is that what you're asking
             me?
21
             Q.      No. I said did all the relevant facts that you found and
22           investigated, did they make their way to your report?

23           A.      I will say I did not do a thorough report.

24                                   * * *

25           Q.      Okay. Can you recall for me offhand any portion in
             your report where you talked about my client's demeanor
26           being irrational, aggressive or up and down?

27           A.      If you look in the report, it will say irrational and
             angry. If you look at the DR, right under his name.
28

1   MR. DENNER:     Your Honor, may I approach the witness?

2   THE COURT:        You may.

3   Q. BY MR. DENNER:   If you would just take a look and point that out to me?

4   

5   A.      Right here.  Angry, threatening, irrational.

6   Q.      Was that his demeanor the whole time?

7   A.      No.  I said he was up and down.

8   Q.      Okay.  Do you think it would be an important fact to note on your report if the defendant may have smelled like alcohol or not?

9   

10  A.      Yes.

11  Q.      Okay.  And that's not contained in your report, is it?

12  A.      No.

13  Q.      That was brought up today about six months after the incident, correct?

14  A.      Yes.

15  

16  (*Id.* at 11-13.)  On re-direct, the prosecutor questioned the officer as follows:

17  Q.      Officer, you stated again you did not do a thorough report.  Are there times where you feel like you've got enough evidence and you move on with the case?

18  

19  A.      Yes.

20  Q.      Was that kind of the situation here?

21  A.      Yes.

22  Q.      Do you wish today that you would have been a little more thorough and included everything that you observed in your report?

23  

24  A.      Sitting here right now, yes.

25  (*Id.* at 13-14.)

26      In his closing argument, the prosecutor specifically referred to the officer's

27  testimony regarding his incomplete report and his wish that it had been more

28  comprehensive:

- 22 -

1
2
3
4
5
6

> The officers did what they needed to do.  They responded. They got the witnesses.  They took their statements.  They were there.  They were present.  They saw what they saw and they wrote it down.  Now [the investigating officer] said he didn't do as comprehensive a report as he would have liked to.  Ladies and gentlemen, when doesn't that happen to someone when it goes to trial?  When an officer goes to trial, and he says, oh, I wish I would have said that.  I wish I would have had that in the report.  That would have helped us out. Don't let the defense turn this on the police.

7
8
9
10
11
12
13
14
15
16
17

(Doc. 18, Ex. F at 26.)  The prosecutor's closing argument, which was based upon the officer's trial testimony, was not improper vouching.  The prosecutor did not place the prestige of the State behind the officer or suggest that information not presented to the jury supported his testimony.  *See Necoechea*, 986 F.2d at 1276.  Rather, in response to Petitioner's reference to the incomplete police report to attack the officer's credibility, the prosecutor argued that it was not uncommon for a police officer to forget to include something in a report.  This was not improper vouching.  *See Necoechea*, 986 F.2d at 1276 (holding that the prosecutor has reasonable latitude in fashioning closing arguments, and can argue reasonable inferences based on the evidence); *Bible v. Schriro*, 497 F. Supp. 2d 991, 1026 (D. Ariz. 2007) (the prosecutor's characterization of the police investigation did not constitute improper vouching).

18
19
20
21
22

Because the prosecutor did not improperly vouch for the investigating officer, Petitioner cannot show that the state court's rejection of this improper vouching claim was contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d).  Therefore, he is not entitled to habeas corpus relief on this portion of Ground Two.

23

**V.      Conclusion**

24
25
26

Because Petitioner's claims are either procedurally barred from federal habeas corpus review or lack merit, the Court recommends that the Petition for Writ of Habeas Corpus be denied.

27

Accordingly,

28

1      **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus

2  pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED**.

3      **IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave

4  to proceed in forma pauperis on appeal be denied because dismissal of the Petition is

5  either justified by a plain procedural bar and because Petitioner has not made a

6  substantial showing of the denial of a constitutional right in his remaining claims for

7  relief.

8      This recommendation is not an order that is immediately appealable to the Ninth

9  Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1)

10  should not be filed until entry of the District Court's judgment.  The parties shall have

11  fourteen days from the date of service of a copy of this recommendation within which to

12  file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

13  6, 72.  Thereafter, the parties have fourteen days within which to file a response to the

14  objections.  Failure to file timely objections to the Magistrate Judge's Report and

15  Recommendation may result in the acceptance of the Report and Recommendation by the

16  District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114,

17  1121 (9th Cir. 2003).  Failure to file timely objections to any factual determinations of

18  the Magistrate Judge may be considered a waiver of a party's right to appellate review of

19  the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's

20  recommendation.  *See* Fed. R. Civ. P. 72.

21      Dated this 12th day of December, 2014.

22

23

24  _____

25                       Bridget S. Bade
                      United States Magistrate Judge

26

27

28